# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MOORE, BRIAN HATHEWAY, ANTONIO CASTILLO, ALEXANDER SILVA, JON SANDERS on their own behalf, on behalf of all others similarly situated, and on behalf of the general public.<br><br>Plaintiff,<br><br>v.<br><br>R.E. STAITE ENGINEERING, INC. Defendants | Case No. 07 CV 718-JM (WMC)<br><br>**ORDER OF FINAL APPROVAL OF CLASS SETTLEMENT, CLASS ENHANCEMENTS, AND ATTORNEYS FEES**<br><br>Hearing Date: December 18, 2008<br>Time: 2:00 p.m.<br>Magistrate: Hon. William McCurine |

## I
## INTRODUCTION

Preliminary approval of this class action settlement was granted on September 4, 2008. The settlement agreed to by the parties resolves the wage and hour Class Claims[1] of the class of Plaintiffs[2] against Defendant, R.E. STAITE, during the Class Period.[3] Plaintiffs' claims included

---

[1] Claims that Defendant violated wage and hour laws under California and/or Federal and claims that Defendant violated California Business and Professions Code §§17200, et seq.. Settlement Agreement, Exhibit 1, p. 8, ¶9, Class Claims. Order Preliminarily Approving Class Certification and Settlement ["Preliminary Order"], paragraphs 3, 8 d., & 14, dated September 4, 2008.

[2] "All persons who were employed by Defendant in California in non-exempt (hourly) positions and who primarily worked in the field, and whose primary duties did not consist of office work or

1

contentions that Defendant failed and or refused to provide Class Members their rest breaks. Defendant has a relatively high turn over rate, employing 20 to 35 Class Members at a time, resulting in a total class of 153 individuals. The settlement amount in this case is two hundred and forty five thousand dollars ($245,000.00).

Plaintiffs' Complaint pled the nine causes of action alleging violations of California statutes:  (1) unfair business practices; (2) failure to pay for all hours worked (3) failure to provide lunch breaks; (4) failure to provide rest periods; (5) failure to pay wages when due;(6) failure to pay wages upon quitting or discharge;(7) failure to provide accurate wage statements; (8) withholding monies knowingly owed; and (9) failure to provide safe employment.

Defendant contends it complied with all California and federal wage and hour laws, and that a substantial portion of all hours worked was subject to the exclusive jurisdiction of United States government, and not subject to California law,[4] the work having been performed or having been originated, on federal enclaves. Defendant has contended, and Plaintiffs have conceded, that during the Class Period a substantial amount of plaintiffs' hours worked physically occurred on military installations, including: (1) the 32nd Street Naval Station in San Diego, (2) Point Lorna Naval Submarine base in San Diego, (3) North Island Naval Station in Coronado, (4) Seal Beach Naval Weapons Station in Seal Beach, (5) San Clemente Island Naval Station, and/or (6) Camp Pendleton Marine Base.  Defendants contend, and Plaintiffs have conceded, that an average of 43% of the Named Plaintiffs work occurred at those locations: Castillo 15%, Moore 31%, Hathaway 35%, Sanders 59%, Silva 74%. Based on all of the above, Defendant contended that

---

clerical work, between December 22, 2002 and the date of this Court's preliminary approval of the Settlement." Order Preliminarily Approving Class Certification and Settlement ["Preliminary Order"], paragraph 7, dated September 4, 2008.

[3] December 22, 2002 to September 4, 2008. Exhibit 1, Settlement Agreement, p. 5, para. 9, and p. 5-6 para. 13.

[4] U.S. Const., art. I, §8, cl.17; Paul v. U.S. Government (1963) 371 U.S. 245, 268. Goodyear Atomic Corp. v. Miller (1988) 486 U.S. 174, 180-181    Kelly v. Lockheed Martine Services Group (DPR 1998) 25 F. Supp.2d 1, 3. Brictson Dec. ¶ 23.

Plaintiffs California claims were precluded in their entirety.[5]

## II.

## ANALYSIS FOR FINAL APPROVAL

### i) Standard of Review

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."[6]

### ii) Strength of Plaintiffs' Case and Risks Of Litigation

Defendant denies all of Plaintiffs' claims, and maintains that it complied with all California and federal wage and hour laws. In addition, Defendant maintains that California wage and hour laws do not apply to the majority of Plaintiffs' claims, contending Plaintiffs' work occurred within federal enclaves. In addition, California wage and hour law regarding the burden of proof in regards to rest breaks remains in flux.

Defendant argues that only <u>federal</u> wage and hour law applied, not California law.[7] Property within the territorial boundaries of the State of California that have been transferred to the U.S. Government may be subject to the exclusive jurisdiction of the federal government, or three types of exceptions to that exclusive jurisdiction.[8] Case law has developed discussing the three possible scenarios, or qualifications, to the exclusive jurisdiction of the United States. The

---

[5] Brictson Decl. ¶23.
[6] <u>Hanlon v. Chrysler Corporation</u>. 150 F.3d 1011, 1026 (9th Cir. 1997), citing <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1375 (9th Cir. 1993), and <u>Officers for Justice</u>, 688 F.2d 615, 625 (9th Cir. 1982).

[7] Brictson Decl. ¶11-14
[8] <u>Paul v. United States</u> 371 U.S. 245, 264 (1963).

first exception described in case law is the exception in which the state may continue to exercise jurisdiction expressly reserved by the state as a condition to its consent (and consistent with the federal use).[9] The second exception to exclusive jurisdiction is that state laws existing at the time the United States accepts jurisdiction over the property at issue remains enforceable upon that property unless "abrogated" by federal law.[10] As such, property within the territorial boundaries that have been transferred to the U.S. Government may be subject to:

- The exclusive jurisdiction of the federal government (hereinafter "exclusive"); or
- The jurisdiction of the federal government with California maintaining partial jurisdiction in order to effect service and tax (hereinafter "partial"); or
- The proprietarial jurisdiction of California, meaning California maintains jurisdiction over the property as if the transferred had not had occurred (hereinafter "proprietarial"); of that has been transferred from the State of California to the U.S. Government; or
- The concurrent jurisdiction of both the State of California and the U.S. Government (hereinafter "concurrent").

The terms and condition of the transfer expressed by the State of California and the federal government determine the jurisdictional status of the land.

Defendant contends, and Plaintiffs have conceded, that Defendant's office is located on the 32nd Street Naval Base.[11] Defendant has contended, and Plaintiffs have conceded, that during the Class Period a substantial amount of plaintiffs' hours worked physically occurred on military installations, including: (1) the 32nd Street Naval Station in San Diego, (2) Point Lorna Naval Submarine base in San Diego, (3) North Island Naval Station in Coronado, (4) Seal Beach Naval Weapons Station in Seal Beach, (5) San Clemente Island Naval Station, and/or (6) Camp

---

[9] Id at 268.
[10] James Stewart & Co. v. Sadrakula, 309 U.S. 94 (1940).
[11] Brictson Decl. ¶ 23.

4

[PROPOSED] ORDER OF FINAL APPROVAL

Pendleton Marine Base.[12]  Defendants contend, and Plaintiffs have conceded, that an average of 43% of the Named Plaintiffs work occurred at those locations: Castillo 15%, Moore 31%, Hathaway 35%, Sanders 59%, Silva 74%.[12]

Although Plaintiffs disputed Defendant's contentions, having performed adequate factual and legal research, including obtaining satellite images of the worksites , researching California States Lands Commission and County Recorder records, and consulting with cartographers, it is apparent that this dispute is subject to expert witness testimony, and interpretation of 60 years of land deeds and lease agreements since World War II.  As such, Plaintiffs face a substantial risk proceeding with further litigation, and settlement appears reasonable.

### iii) Discovery

The Parties have conducted significant discovery and investigation of the facts and law both before and after the Action was filed.[12]   That discovery and investigation included the exchange of information pursuant to extensive informal discovery (including initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure), meetings and conferences between Class Counsel and Defendant's Counsel, neutral evaluation conferences with this Court, formal written discovery (including special interrogatories, document requests, and requests for admissions), and extensive interviews of potential witnesses.[15]

Class Counsel performed legal research, as well as research the archival documents of the County Recorders at the multiple job sites that Plaintiffs performed *hours work*, to determine the terms and conditions of the property transfers, their boundaries, the evolution of the transfers, leases, exchanges, and other agreements and contracts. [15] Class Counsel also had to match the legislative history of the applicable state statutes its evolution, to the jurisdictional history of the

---

[12] Brictson Decl.¶¶14-21.

multiple job sites at issue.[13]

Class Counsel consulted cartographers employed by both the State of California and the Department of the Navy.[16]   The Action involves numerous complex issues of fact and law, including the application of the federal enclave doctrine, and California public policy regarding the exchange of land with the federal government.[16]

**iv) The Amount Offered In Settlement, Potential Recovery, Notice**

As described in the attached Declarations, the parties participated in multiple document exchanges and informal discovery conferences. As noted above, the total settlement amount in this case is $245,000. This settlement provides reasonable monetary relief for the settlement class members. Over and above this amount, Defendant has accepted full responsibility for the administration costs.[14] The settlement awards to each of the settlement classes are based on a formula which represents a pro rata distribution of the settlement based on the number of weeks worked within the class period.[15] The method of allocating the fund among claimants, on a pro rata basis according to weeks worked for covered employees during a covered time period, is a reasonable means of approximating the relative value of each claim, and thus ensures a fair distribution of the fund.

Claimants' ability to dispute the Defendant's records on the Claim Form[16] as to the dates that he or she met the definition of a Class Member, or as to the proper size of his or her claim, protects each Class Members right to fair and compensation. Additionally, the requirements that the Claims Administrator notify Class Members of any deficiencies in their Claim Forms will encourage all Class Members who do not opt out to file valid claims.

---

[13] Brictson Decl.¶¶14-21.
[14] Exh. 1, Settlement Agreement, page 9, ¶2
[15] Exh. 1, Settlement Agreement, page 10, ¶23(d)
[16] Exhibit 2, Notice of Class Settlement and Claim Form; Exh. 1, Settlement Agreement, p. 12 ¶26(c).

The form of the Notice and the manner of distribution performed by the Parties was the best notice practicable. The Claims Administrator performed address updates and verifications as necessary prior to the first mailing.[17] Defendant paid for the cost of such notice.[18]

The Notice was directly mailed to all Class Members advising them of :1) the nature of this litigation; 2) the definition of the settlement classes; 3) the identity of Class Counsel; 4) essential terms of the Settlement Agreement; 5) the amount of attorneys' fees Class Counsel will seek and the proposed service payments to the named Plaintiffs; 6) how to participate in the settlement; 7) this Court's procedures for final approval of the Settlement Agreement; 8) how to challenge or opt out of the settlement; and 9) how to obtain additional information regarding this litigation and the settlement.[19]

The Claims Administrator sent Notice and Claim Form to each Class Member by first class mail after preliminary approval, all objections, claims, or opt-outs are must be post marked by December 6, 2008.[23] As such, it complies with the Notice requirements set forth in F.R.C.P. 23(e). Specifically, the Notice advised the putative class members of the amount of fees and costs that would be sought by Class Counsel and advised them that they could object to the terms of the settlement if they choose to do so. The Declaration of the Claims Administrator supports the determination that all class members received reasonable notice and approval of the settlement is in compliance with law.

**v). Settlement Awards**

As agreed by the parties, and explained in the Notice, the settlement awards payable to participating class members are based on a formula[20]: each member who returns a claim form shall receive a proportional share of the settlement, based on the total number of shifts worked by

---

[17] Exh. 1, Settlement Agreement p. 12 ¶ 27.
[18] Exh. 1, Settlement Agreement p. 9, ¶ 2.
[19] Exhibit 2, Notice of Class Settlement and Claim Form;
[20] Exh. 1, Settlement Agreement, p. 10¶ 23(d).

7

[PROPOSED] ORDER OF FINAL APPROVAL

the class within the class period, at a rate of approximately $15 a week.[21] Assuming that the Court grants the full amount of attorney's fees, costs, enhancement awards and claims administration costs sought, a class member who worked four years full time shall be entitled to approximately $3,120.00.[21]

The true benefit of this total payout settlement is evidenced by the reasonable monetary recovery achieved for the settlement class members, in light of the constitution of the class and the risks of litigation. Going forward with trial likely would not have increased the monetary relief recovered by the class and carried with it certain dangers, including liability being determined in favor of defendant and the class members receiving absolutely no monetary relief.

**vi) Experience and Views of Counsel**

Class Counsel, Timothy Brictson and Stefan Cohn, submitted sufficient declarations establishing that they regularly handle wage and hour cases and are experienced in wage and hour class actions. Class Counsel have served as the attorneys in several complex class actions, representing plaintiff classes in other class actions, several of which were wage and hour class actions. Class Counsel successfully pursued the wage and hour class actions where class action status was certified. Class counsel have previous litigation experience as to the unique factual issues central to the litigation of this lawsuit, specifically the questions of concurrent or exclusive jurisdiction of state or federal law over California employees working in and around navigable waters and federal enclaves. As a result, Class Counsel are in a unique position to determine the difficulty Class Members face. Defense counsel, J. Rod Betts and Gregory Klawitter, Paul Plevin Sullivan and Connaughton are well versed in complex and employment litigation. Class counsel expects should this matter proceed into further litigation, Defense counsel would provide a competent, zealous, and insightful defense. As such, the negotiated settlement and claimed

---

[21] Exh. 2; Brictson Decl. ¶ 39.

attorneys fees are fair and reasonable and in compliance with the law.

**vii) No Class Members Have Objections**

The Declaration of the Claims administrator fully supports approval of this settlement.

**viii) Attorneys' Fees**

The settlement agreement reached by the parties provides that Class Counsel, the Law Office of Brictson & Cohn, will receive $70,000.00 in attorneys' fees. "Federal courts have the ability to award attorneys' fees 'in the exercise of their equitable powers.'" Wininger v. SI Management L.P., 301 F.3d 1115, 1120 (9th Cir. 2002). The common fund doctrine permits the burden of litigating to be shared among the individuals that are benefited by the efforts of the litigant. Paul,Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989). "'Jurisdiction over the fund involved in the litigation allows a court to ... assess[ ] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.'" Wininger, 301. F.3d at 1120 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). In this case, counsel have conferred more than reasonable value upon the individual class members. Counsel expended significant time and effort in obtaining this settlement. Accordingly, the Court concludes that the requested attorneys' fees are fair and reasonable.

**ix) Class Representative Enhancement**

The settlement requires Defendant to pay Plaintiff a class representatives enhancement awards of $5,000 each. Court's assess incentive awards based on the following criteria: (1) the risk assumed by the class representative; (2) the difficulties incurred to the plaintiff personally; (3) time and energy spent; (4) the length of the litigation; and (5) the benefit to the plaintiff as class representative. See Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294, 299 (N.D.Cal. 1995). In light of the standards and the time Plaintiff spent preparing the case with his

counsel and the risks and costs assumed, the Court concludes that the class representative enhancement award of $5,000.00 each is fair and reasonable.

## III

## CONCLUSION

For the reasons set forth above, the Court:

1. **CERTIFIES** as class members for the purposes of settlement as: "All persons who were employed by Defendant in California in non-exempt (hourly) positions and who primarily worked in the field, and whose primary duties did not consist of office work or clerical work, between December 22, 2002 and the date of this Court's preliminary approval of the Settlement, September 4, 2008.

2. **APPROVES** the parties' settlement agreement that requires Defendants to pay a gross sum of $245,000.00.

3. **APPROVES** the parties' settlement agreement that requires Defendants to pay a Administration and Notice Costs independently and separate from the  gross sum of $245,000.00 settlement.

3. **APPROVES** attorneys' fees for Plaintiff's counsel in the amount of $70,000 to be paid out of, and to be subtracted from, the gross settlement sum of $245,000.00.

4. **APPROVES** the class representative enhancement award for Plaintiff in the amount of $5,000 each to be paid out of, and to be subtracted from, the gross settlement sum of $245,000.00.

/

/

/

/

5. **APPROVES** the payment of $3,750 payable to the California Labor and Workforce Development Agency, in accordance with page 9-10, ¶23(c)(4) of the Settlement Agreement Additionally, the Court ORDERS the clerk to close this case.

    IT IS SO ORDERED.

Dated: December 26, 2008

                                      Magistrate Judge William McCurine Jr.
                                      United States District Court
                                      Southern District of California